## SETTLEMENT OF A LAW PARTNERSHIP.

Court of Appeals for Hamilton County.

ALBERT BETTINGER v. HERMAN P. GOEBEL.

Decided, May 28, 1915.

*Absence of One Partner Throws the Work Upon the Other—Adjustment of this Difference Not Conditional Upon a Continuance of the Partnership.*

The even course of a profitable law partnership, which had existed between B and G for many years, was interrupted by the election of G to Congress. The campaign prior to his election and the duties of his office thereafter absorbed practically all the time of G and threw the work of the partnership upon B. At the end of a year it was agreed between them that matters should be equalized by G charging himself on the books of the partnership with an amount equal to one-half of his salary received from the Government for the year, but there was nothing said as to a continuance of the partnership, and thereafter it was terminated.

*Held:* That the charge which G had permitted to be placed against him on the books of the firm was not in consideration of a continuance of the partnership, but in settlement of partnership affairs up to that time, and he was not entitled to recover back this amount from B.

*Peck, Shaffer & Peck,* for plaintiff in error.
*Healy, Ferris & McAvoy,* contra.

CARPENTER, J.; MEALS, J., and GRANT, J. (sitting in place of Judges Jones, Gorman and Jones), concur.

This case comes into this court on error to the common pleas court of this county, on an action for an accounting growing out of partnership relations between Herman P. Goebel and Albert Bettinger.

The plaintiff and defendant had been partners in the practice of law, under the firm name of Goebel & Bettinger, for many years prior to the first day of December, 1903. It appears that the partnership was begun about 1881, during which time each one drew one-half of the net earnings of said firm.

At the November election of 1902, the defendant in error was elected Congressman from the Second Ohio Congressional Dis-

trict.  The partnership up to and during all the time intervening
between 1881 and 1903 seemed to have been mutually harmo-
nious.   On or about the first day of December, 1903, the defend-
ant in error, Herman P. Goebel, immediately prior to his de-
parting for Washington to continue his duties as Congressman,
called upon Mr. Bettinger at their office, when the defendant in
error wanted to know of the plaintiff in error whether they were
going to continue in partnership, and if so, upon what basis of
division.   The plaintiff in error, Bettinger, stated that before he
discussed that subject there was another subject which he de-
sired to settle.   They immediately entered into a conference re-
lating to their partnership matters as they had theretofore
existed, when it was agreed that the defendant in error should,
on account of his having been absent from the business during
the time that he was engaged in his campaign for election, and
also during the time he was absent in Washington in the per-
formance of his congressional duties, charge himself on the
books with $4,300, the same as though he had devoted himself to
the partnership business during the time of his absence.

The evidence tends to show that from the time Judge Goebel
became an aspirant for the congressional nomination in the
fall of 1902, until the time he went to Washington to take his
seat in the fall of 1903, his time, activities, energy and services
were largely devoted to matters connected with his congressional
campaign and his public work.   The evidence shows that Mr.
Bettinger during that time was extremely active in the prac-
tice of the law; that the firm was doing a large and prosperous
business; that Judge Goebel, by reason of his having his atten-
tion and principal interest in other channels, was actually pro-
ducing but a small part of the financial returns which the firm
was enjoying, although he was participating equally therein as a
partner; that the fees amounting to $22,000 or $23,000 during a
period, roughly speaking, of about a year prior, were earned
through the exertions of Mr. Bettinger; and that during this
same period Judge Goebel was not only receiving credit for his
congressional salary and devoting his time largely to the public
affairs, but was being credited with a full and equal one-half of
the receipts of the firm.

Mr. Goebel assented to the suggestion of Mr. Bettinger, and directed the sum of $4,300 to be charged to him in the partnership books of account, which was afterwards treated as partnership assets and deposited in bank to the credit of said partnership.

Upon the deposit of this amount, the partnership then existing was dissolved; and it is admitted that upon the basis of this settlement each party received his respective amount of the moneys due him.

After the termination of these negotiations of settlement, the two partners considered whether or not they should continue in their partnership relations, and it was finally agreed between them that the partnership name should continue as before, on the basis of distribution of the earnings as follows: Five-sixths thereof should belong to said Bettinger and one-sixth to said Goebel. A few days thereafter said partners agreed to revoke their agreement to continue said partnership as theretofore agreed upon, and that said partnership should be dissolved and discontinued.

It is also admitted that in all said negotiations nothing whatever was said that the settlement in reference to the payment of said $4,300 should be dependent upon the continuance of a future partnership.

The court below found that this agreement was made in consideration of the partnership continuing under the firm name of Goebel & Bettinger, and disallowed the charge of $4,300 as a charge against said Goebel.

We think the court erred in this finding.

*Lindley on Partnership*, page 512, says:

"To an action for an account of partnership dealings and transactions, an account thereof already stated and settled between the parties affords a good defense. No precise form is necessary to constitute a stated and settled account; but an account stated, unless it be in writing, is no defense to an action for a further account. It is not, however, necessary that the account should be signed by the parties, if it can be shown to have been acquiesced in by them; and an account may be stated and settled, although a few doubtful items are omitted."

It being admitted by both sides in the argument of this case that no testimony whatsoever was given even tending to show that the settlement between these parties was dependent on or had any connection with the future continuance of the partnership, we are at a loss to know how the court could have found the fact to be that it was a settlement dependent upon a future continuance of said partnership. The court appears to have found this fact from the language used in the report of this case in Vol. 58 of the Law Bulletin of September 22, 1913, on page 553:

"In putting the proper construction upon the conversation of November 6, I must take into consideration all the circumstances then existing and the natural and probable attitude of the parties. And after carefully weighing all the surrounding circumstances of this case, I am of the opinion that a conversation did take place on November 6 regarding this dissolution, and I am further of the opinion and do find that this agreement was that in consideration of the partnership continuing under the firm name of Goebel & Bettinger, Judge Goebel to receive one-sixth of the partnership profits and to be allowed to retain all of his congressional salary, he was to consent to be charged on the books of the firm with having received $4,300. * * * It seems to me that this would be the natural conduct of the partners. I can not believe that one partner, who is entitled to an equal share in the firm's business, would willingly consent to relinquish so large an amount in the firm's profits unless there was some consideration by way of continuance of the partnership."

It is settled law that a court or a jury must determine the existence of a fact from presumption of law or from a known fact or facts, or from testimony tending to prove a fact. He may not and should not determine a fact to exist from mere conjecture, or what appears to him would be the natural conduct of the parties.

There is no testimony in connection with the settlement of these two parties to make the payment of it dependent upon a continuance of the partnership relation; the nexus between the two is wholly wanting.

Even assuming that the defendant in error consented to charge himself with $4,300 upon the partnership books, under an agree-

ment with the plaintiff in error that such charge should be dependent upon the continuation of their partnership affairs for another year; and that the plaintiff in error, within a few days thereafter, had renounced such partnership relation, it is quite doubtful whether the defendant in error would have been able to establish a right in this suit to withdraw the charge or receive back that amount of money, all of which, according to the testimony, had been distributed in the final settlement of the affairs of said partnership.

It is admitted that the defendant in error, during the time that he was engaged in his canvass for election to Congress, and from that time to the date of settlement, had contributed but little toward the earnings of the partnership; and that the plaintiff in error had, during that time, earned large sums of money, all of which were treated as partnership property, subject to an equal division between the two parties. It was then suggested by the plaintiff in error that it would be a proper thing for the defendant in error to turn over to the partnership an amount equal to the salary which he had received in the meanwhile. It was readily assented to by the defendant in error. The question naturally arises, what equity exists on the part of Goebel to recover back this amount of money which he had voluntarily consented to turn over into the partnership funds. In order to do so he must establish that it would be inequitable for the plaintiff in error to retain it, and in order to create the inequity it would be incumbent upon him to show that Mr. Bettinger was being unjustly enriched. The mere fact that the plaintiff in error had renounced the continuance of the partnership would not be sufficient. The restoration of the $4,300 to the defendant in error would not only be enriching the defendant in error without any consideration whatever, but at the same time it would be impoverishing the plaintiff in error without justification and without consideration.

This is an equitable suit, and the parties seeking equity must do equity; and it must be apparent to any one that the defendant in error does not support his claim upon any equitable ground.

For the reasons stated, the judgment of the court of common pleas will be reversed.